**WO**

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF ARIZONA

|  |  |
|---|---|
| Rodney Cable,<br><br>               Plaintiff,<br><br>v.<br><br>City of Phoenix et al.,<br><br>               Defendants. | No. CV-12-00216-PHX-JAT<br><br>**ORDER** |

Pending before the Court are Defendants' Motion for Summary Judgment (Doc. 37) and Defendants' Motion to Strike Plaintiff's Disclosure of Expert Witnesses (Doc. 39). The Court now rules on the motions.

## I.   Background

Plaintiff Rodney Cable filed this action against Phoenix Police Officers Tomek and Smith, as well as the City of Phoenix (the "City"), to recover for injuries Officers Tomek and Smith allegedly caused to Plaintiff while arresting him. (Doc. 1).

On January 1, 2011, Officers Tomek and Smith were riding in a marked vehicle on routine patrol when they stopped at a red light behind a vehicle driven by Plaintiff. (Doc. 38 at 1-2). The officers noticed smoke near the front passenger side of their vehicle followed by firecrackers exploding. (*Id.* at 2). Because the officers believed Plaintiff's vehicle was the only possible source of the fireworks, Officers Tomek and Smith initiated a traffic stop. (Doc. 38-1 at 20). The officers activated their lights and sirens, but Plaintiff drove for almost two miles before stopping. (*Id.*). Plaintiff alleges he stopped as soon as he was aware of the officers' intent to stop his vehicle. (Doc. 44-1 at 8).

Once Plaintiff had stopped, the officers drew their weapons while Officer Tomek ordered Plaintiff out of his vehicle. (Doc 38-1 at 21). Officer Tomek ordered Plaintiff to exit the vehicle, walk toward the officers, lift his shirt, and lie face down on the pavement with his arms and legs at his sides. (*Id.*) Plaintiff complied with the officers' commands. (*Id.*)

The deposition testimony of Plaintiff and the officers substantially differs as to the events that followed. According to Plaintiff's deposition testimony, Officer Tomek ran towards Plaintiff and jumped onto Plaintiff's lower back with both knees. (Doc. 44-1 at 8). Once Plaintiff was handcuffed, Officer Tomek then picked Plaintiff up and "slammed him on the hood of [the police car]." (*Id.*) After Officer Tomek searched Plaintiff, Plaintiff was placed in the back of the patrol vehicle. (*Id.*) Plaintiff asked Officer Tomek several times to loosen the handcuffs but he refused. (*Id.* at 8, 17). Officer Tomek then pulled Plaintiff out of the vehicle by the back of his shirt, closed the door, and then smashed Plaintiff into the vehicle, knocking loose Plaintiff's teeth and causing his mouth to bleed.[1] (*Id.* at 12). Officer Tomek then loosened the handcuffs and placed Plaintiff back in the vehicle. (*Id.* at 9).

The officers testified to a different version of events. According to the officers, Officer Tomek placed his left knee between Plaintiff's shoulder blades while handcuffing him. (Doc. 38-1 at 32-33). Officer Tomek checked Plaintiff's handcuffs for excessive tightness by ensuring he could place his index finger between the handcuffs and Plaintiff's hands. (*Id.* at 6). He placed Plaintiff in the back seat of the patrol vehicle and instructed Plaintiff to sit diagonally across the seats. (*Id.*). Plaintiff complained about his handcuffs being too tight but was sitting on his handcuffs. (*Id.* at 25). After Officer Tomek loosened the handcuffs, he placed Plaintiff back in the vehicle. (*Id.*)

It is undisputed that the officers then took Plaintiff to the police precinct for booking. (*Id.* at 25). It is also undisputed that Plaintiff complained of back pain, but

---

[1] Plaintiff testified his loosened teeth fell out "three days later or four days later." (Doc. 44-1 at 12).

- 2 -

1    Officers Tomek and Smith testified that Plaintiff said his back pain was from a prior
2    injury, (*id.* at 25, 32), while Plaintiff denies ever attributing his back pain to a prior
3    injury. (Doc. 45 at 3). Plaintiff further testified he asked for medical treatment of both his
4    mouth and back, (Doc. 44-1 at 15), while the officers testified that Plaintiff complained
5    only about back pain. (Doc. 38-1 at 25, 32). The fire department examined Plaintiff at the
6    precinct, and its incident report notes that Plaintiff "aggravated [a] previous back
7    problem" and "[patient] states he saw a chiropractor for problem in past but did not
8    follow up." (Doc. 38-1 at 35). Plaintiff summarily disputes the incident report but offers
9    no controverting facts. (Doc. 45 at 3); (Doc. 44-1 at 13-14).

10        Plaintiff was subsequently booked into the Maricopa County jail. (Doc. 44-1 at
11   13). Plaintiff's booking photo does not show any blood on his mouth or clothing, (Doc.
12   38 at 4), but Plaintiff asserts he was bleeding. (Doc. 45 at 3 n.2). After booking, Plaintiff
13   underwent a medical screening. (Doc. 44-1 at 13). According to Plaintiff, he told the
14   screener that he could not feel his legs and that his teeth had been injured. (*Id.*) Screening
15   records show Plaintiff reported only chronic back pain and was treated for a "skin tear to
16   left wrist" with a bandage. (Doc. 38-1 at 47). Plaintiff reported no dental problems.[2] (*Id.*)
17   The records also state that Plaintiff "[d]enies any other medical issues at present." (*Id.*)
18   Plaintiff disputes these records, stating that he did not complain of chronic back pain and
19   that he subsequently received wound care on his wrists almost every day for a week.
20   (Doc. 44-1 at 13).

21        The first evidence that Plaintiff suffered an acute back injury was recorded nearly
22   three weeks later. Maricopa County Correctional Health Services notes show that on
23   January 20, 2011 Plaintiff reported back pain for which he had been "seen before" and
24   had been told stemmed from his L5 disc but which was worse after an "officer landed
25   knee in midback" during his arrest. (Doc. 38-1 at 49). Plaintiff disputes these notes, but
26   does not point to any controverting evidence. (Doc. 45 at 3); (Doc. 44-1 at 14). Plaintiff

27
28         [2] Plaintiff's subsequent dental records do not reveal any injuries and Plaintiff refused a June 30, 2011 dental examination as "not necessary." (Doc. 47 at 25, 27).

1    also testified that he never told any health care provider about a crushed L5 disc. (Doc.

2    44-1 at 14).

3        On March 2, 2011, Plaintiff saw Dr. Emerson, an orthopedic surgeon, whose

4    treatment notes state that Plaintiff reported a lifetime history of back pain that was

5    aggravated when according to Plaintiff "an officer jumped on his low back with his

6    knees." (Doc. 38-1 at 51). Plaintiff disputes Dr. Emerson's treatment notes, denying in

7    his deposition that he ever reported a history of back pain prior to his arrest.[3] (Doc. 45 at

8    3); (Doc. 44-1 at 14-15).

9        Dr. Emerson preliminarily diagnosed a "[p]otential gross instability of the L5

10   vertebra secondary to old pars defects with possible acute on chronic pars fractures and

11   secondary L5 instability with potential cord compromise" and ordered an MRI. (Doc. 38-

12   1 at 51). Plaintiff returned to Dr. Emerson on April 20, where Dr. Emerson noted:

13              a history of right low back pain, right gluteus, right leg pain,
                numbness and tingling under that ankle right toe, which he
14              states he has had periodically his whole life. However, during
                his arrest he states all these symptoms dramatically changed
15              for the worst when he was he was face down on the pavement
                and an officer jumped on his low back with his knees. He
16              states he had a snapping painful episode that has been present
                since that time . . . .
17

18   (Id. at 53). Upon review of the MRI, Dr. Emerson found "Grade 2 anterolisthesis of L5

19   on S1 with bilateral pars defects and 'severe central canal stenosis' with 'severe bilateral

20   neuroforaminal stenosis.' Also a degenerative tear and annular tear of the L4-L5 disc."

21   (Id.) On May 26, 2011, Plaintiff's Arizona Department of Corrections health record noted

22   Plaintiff had a history of lower back injury. (Id. at 55). Plaintiff disputes this record,

23   pointing to (1) his deposition testimony that when he was booked on January 2, 2011, he

24   did not report any history of chronic back pain and (2) several other health records. (Doc.

25   45 at 4). One record to which Plaintiff cites notes "severe lumbar degenerative disease"

26   but no acute injuries; another record dated March 2, 2011 notes Plaintiff's statements that

27   _____

28       [3] Plaintiff never affirmatively testifies that he had no back pain or injury before
     being arrested.

an officer "stomped" on his back. *See* (Doc. 44-1 at 14); (Doc. 44-6 at 3); (Doc. 44-7 at 1).

On September 19, 2011, a neurosurgeon diagnosed Plaintiff with spondylolisthesis and noted Plaintiff's report that his pain started after an officer jumped on him. (Doc. 38-1 at 57). Plaintiff underwent surgery and reported no leg pain and "no complaints" in his follow-up visit, (*id.* at 65), although Plaintiff testified in his deposition that his back still hurts, (Doc. 44-1 at 6).

Plaintiff sued Officer Tomek, Officer Smith, and the City for assault and battery, negligence and gross negligence in effecting Plaintiff's arrest, intentional infliction of emotional distress, and violation of Plaintiff's Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983. (Doc. 1-1 at 5-7).

Defendants now move to strike Plaintiff's disclosure of expert witness Dr. Shah (Doc. 39) and also for summary judgment in their favor.[4] (Doc. 37). The Court first considers Defendants' motion to strike because that motion, if granted, narrows the evidence considered in evaluating Defendant's motion for summary judgment.

## II.    Motion to Strike

Defendants argue that Plaintiff failed to timely disclose expert witness Dr. Zaheer A. Shah and ask the Court to strike his testimony. (Doc. 39).

### A.    Background

The Court's Rule 16 Scheduling Order (Doc. 15) ordered that all expert disclosures were required to include a written report pursuant to Federal Rule of Civil Procedure ("Rule") Rule 26(a)(2)(B) and were due on September 7, 2012. (Doc. 15 at 2). All responsive expert disclosures were due on October 12, 2012. All rebuttal expert disclosures were due on November 16, 2012. The discovery cut-off deadline was February 28, 2013. (*Id.*)

On September 7, 2012, Plaintiff disclosed his expert witness list, listing Dr. Shah

---

[4] Subsequent to the filing of Defendants' motions, and upon the parties' stipulation, (Doc. 40), the Court dismissed all of Plaintiff's claims against Officer Smith as well as Plaintiff's section 1983 claim against the City. (Doc. 41).

as "expected to testify regarding Mr. Cable's past and present medical condition including the injuries sustained during the events giving rise to this cause of action." (Doc. 22 at 2). Plaintiff did not disclose Dr. Shah's written report by the September 7 deadline, nor has Plaintiff ever disclosed the report.

Plaintiff has attached an affidavit of Dr. Shah to his response to Defendants' motion to strike, which Plaintiff filed on May 6, 2013. (Doc. 42-1 at 1). This single-page affidavit, dated May 1, 2013, recites that Dr. Shah is licensed to practice medicine, has reviewed Plaintiff's medical records, and offers the opinion that Plaintiff's condition is most consistent with "an acute superimposed on chronic lower back injury" that "could have been caused or exacerbate [sic] by an acute injury, such as one jumping onto Plaintiff's back as alleged in Plaintiff's complaint." (*Id.*) Plaintiff has also attached a resume listing Dr. Shah's current position, training, education, accolades, and particular interests. (*Id.* at 2).

## B.   Legal Standard

Rule 26(a)(2)(A) requires a party to disclose the identity of any expert witness it may use at trial. Unless otherwise ordered, the disclosure must include a written report prepared by the witness (unless the witness was the party's treating doctor, in which case only a summary is required). Fed.R.Civ.P. 26(a)(2)(B). The parties are required to make this disclosure at the time that the court orders. *Id.* 26(a)(2)(D). When a party fails to make a timely disclosure required by Rule 26(a), "the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial" unless it proves that its failure was "substantially justified or is harmless." Fed.R.Civ.P. 37(c)(1); *Torres v. Los Angeles*, 548 F.3d 1197, 1213 (9th Cir. 2008).

The Ninth Circuit Court of Appeals ("Court of Appeals") has enumerated four factors in determining "whether a violation of a discovery deadline is justified or harmless: . . . (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of the trial; and (4) bad faith or willfulness involved in not timely disclosing the evidence."

1   *Lanard Toys Ltd. v. Novelty, Inc.*, 375 F. App'x 705, 713 (9th Cir. 2010) (citing *David v.*
2   *Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)).

3          If a court concludes that a discovery deadline violation is not substantially justified
4   or harmless, it has "particularly wide latitude" in its discretion to "issue sanctions under
5   Rule 37(c)(1)." *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th
6   Cir. 2001). Rule 37(c) is intended to provide a "self-executing," "automatic sanction
7   provid[ing] a strong inducement for disclosure of material," Fed.R.Civ.P. 37 advisory
8   committee's note (1993). Because the rule incorporates the sanctions of Rule
9   37(b)(2)(A)(i)-(vi), a court may exclude entirely the testimony of an untimely disclosed
10  expert witness. *See* Fed.R.Civ.P. 37(c)(1)(C), 37(b)(2)(A)(ii); *Yeti by Molly*, 259 F.3d at
11  1106 (citing *Ortiz-Lopez v. Sociedad Espanola de Auxilio Mutuo Y Beneficiencia de*
12  *Puerto Rico*, 248 F.3d 29, 35 (1st Cir. 2001)).

13          **C.      Analysis**

14          Plaintiff concedes that his disclosure of Dr. Shah was untimely, but argues that his
15  indigence substantially justified his failure to timely disclose Dr. Shah's report, or
16  alternatively, that his failure is harmless. (Doc. 42 at 2-3). The Court concludes Plaintiff's
17  failure was neither substantially justified nor harmless.

18          Turning to the first factor enumerated in *Lanard Toys*, the Court finds Plaintiff's
19  non-disclosure created substantial prejudice to Defendants. At the time that Defendants'
20  responsive expert disclosures were due, Plaintiff had disclosed only that Dr. Shah would
21  testify "regarding Mr. Cable's past and present medical condition including the injuries
22  sustained during the events giving rise to this cause of action." (Doc. 22 at 2). This
23  disclosure was grossly inadequate, *see* Fed.R.Civ.P. 26(a)(2)(B), and placed Defendants
24  in the prejudicial position of having to make their responsive expert disclosures without
25  any notice as to the specifics of Dr. Shah's opinion. Although Plaintiff's disclosure
26  informs that Dr. Shah will opine on Plaintiff's medical condition, it fails to state what the
27  opinions are and their factual basis. Moreover, it fails to disclose Dr. Shah's
28  qualifications, any cases in which he has previously served as an expert, and his

1    compensation, as required. *See* Fed.R.Civ.P. 26(a)(2)(B)(iv)-(vi).

2         In *Goodman v. Staples the Office Superstore, LLC*, 644 F.3d 817 (9th Cir. 2011),

3    the plaintiff disclosed her non-medical expert reports four-and-a-half months late, after

4    the defendant's deadline for disclosing experts had also expired. 644 F.3d at 826-27. The

5    Court precluded the experts from testifying in the plaintiff's case-in-chief. *Id.* at 827. The

6    Court of Appeals agreed that the nondisclosure created "obvious prejudice" because the

7    defendant had made "decisions regarding defense experts under the belief that [the

8    plaintiff's] non-medical experts would not be testifying in her case-in-chief" and the

9    defendant's experts had "developed their opinions and wrote their reports without

10   knowing the scope of [the plaintiff's] experts' opinions."[5] *Id.* at 827.

11        Like the defendant in *Goodman*, Defendants were unable to determine from

12   Plaintiff's inadequate disclosure whether they needed to retain experts to rebut Dr. Shah's

13   testimony. Incredibly, Plaintiff argues that Defendants did not need to know Dr. Shah's

14   testimony because Defendants retained their own experts to review Plaintiff's medical

15   records and were "aware of Dr. Shah." (Doc. 42 at 4). But without Dr. Shah's report, it is

16   equally consistent with Plaintiff's limited disclosure that Dr. Shah would testify that

17   Defendants' alleged conduct did *not* cause Plaintiff's injury, thus eliminating Defendants'

18   need to retain experts. "The purpose of the expert disclosure rule is to 'provide opposing

19   parties reasonable opportunity to prepare for effective cross examination and perhaps

20   arrange for expert testimony from other witnesses.'" *Rembrandt Vision Techs., L.P. v.

21   Johnson & Johnson Vision Care, Inc.*, 725 F.3d 1377, 1381 (Fed. Cir. 2013) (citation

22   omitted). Plaintiff's failure to disclose the report deprived Defendants of this reasonable

23   opportunity, substantially prejudicing them.

24        As to the second factor, the ability of the Defendants to cure the prejudice, the

25   Court finds this factor also weighs strongly against Plaintiff. Plaintiff has still not

26   _____

27        [5] Although the Court of Appeals agreed with the Court on this point, it nonetheless
     reversed on a separate disclosure issue, concluding that the plaintiff's late disclosure of

28   her treating physicians' expert reports would be permitted because the scope of a treating
     physician's written report requirement was unsettled prior to the *Goodman* case. 644 F.3d
     at 826.

disclosed Dr. Shah's report. Not only have the deadlines for Defendants' expert disclosures expired, but the discovery cut-off deadline has also expired and Defendants' motion for summary judgment is pending. Defendants have no opportunity to cure the prejudice at this late stage.

Nevertheless, Plaintiff argues that Defendants were able to cure the prejudice because they rejected a proposed stipulation that would have granted Plaintiff additional time to disclose the expert report. (Doc. 42 at 4). On September 20, 2012, well after the deadline for Plaintiff's expert disclosures had expired, Plaintiff proposed stipulating to an extension of Defendants' responsive disclosure deadline as well as Plaintiff's disclosure deadline.[6] (Doc. 39-1 at 2). But the parties had no power to stipulate to an extension of the Court's Rule 16 Scheduling Order, *see* Fed.R.Civ.P. 16(b)(4) ("A schedule may be modified only . . . with the judge's consent."), and the deadline had already expired. Plaintiff's argument is without merit.

Plaintiff contends the third factor, the likelihood of disruption of the trial, weighs in his favor because a trial date has not yet been set. (Doc. 42 at 4). However, the Court's Rule 16 Scheduling Order warned the parties that "because the deadlines set forth herein will trigger setting a trial date, the Court deems these deadlines to be the equivalent of a firm trial date." (Doc. 15 at 6). *See also Wong v. Regents of Univ. of Cal.*, 410 F.3d 1052, 1062 (9th Cir. 2004) ("If [the plaintiff] had been permitted to disregard the deadline for identifying expert witnesses, the rest of the schedule laid out by the court months in advance, and understood by the parties, would have to have been altered as well. Disruption to the schedule of the court and other parties in that manner is not harmless.").

More significantly, Plaintiff's response implies that Plaintiff has no intention to *ever* disclose the report. *See* (Doc. 42 at 4) ("Plaintiff does not have the resources available to hire a medical expert to comport with Rule 26(a)"). Accordingly, this factor weighs heavily in favor of Defendants because cross-examining Dr. Shah at trial without

---

[6] Plaintiff emphasizes that Defendants initially asked for an extension of their responsive disclosure deadline. (Doc. 42 at 4). This fact is without significance.

1  a properly disclosed expert report would be highly disruptive to the trial process.

2      Finally, the fourth factor asks the Court to consider the bad faith or willfulness

3  involved in not timely disclosing the evidence. The Court finds Plaintiff willfully refuses

4  to disclose Dr. Shah's report. Plaintiff alleges that he cannot pay Dr. Shah the fees

5  required to obtain the expert report, (Doc. 42 at 4), but the Court finds this assertion

6  unsupported as Plaintiff has not provided any affidavit attesting to his indigence. *Cf.*

7  *Woerth v. City of Flagstaff*, 808 P.2d 297 (Ariz. Ct. App. 1990) (holding, in an attorneys'

8  fees case, that "the party asserting financial hardship has the burden of coming forward

9  with *prima facie* evidence of financial hardship"). Furthermore, Plaintiff had every

10  opportunity to request an extension of time or otherwise bring problems to the Court's

11  attention. Instead, Plaintiff is unrepentant, having chosen to idle while every discovery

12  deadline expired.

13      Plaintiff disclosed Dr. Shah's woefully inadequate affidavit only after being

14  confronted with Defendants' motion to strike and motion for summary judgment.

15  Plaintiff chose to file this lawsuit and bears the burden of proving his case. The Court

16  concludes exclusion of Dr. Shah's testimony is the appropriate sanction for Plaintiff's

17  failure to disclose as required under Rule 26(a). *Cf. Quevado v. Trans-Pacific Shipping,*

18  *Inc.*, 143 F.3d 1255, 1258 (9th Cir. 1998) (upholding exclusion of expert testimony when

19  the plaintiff tardily identified the expert and disclosed the expert's report one-and-a-half

20  months later along with his opposition to the defendant's motion for summary judgment).

21      Accordingly, the Court will not consider any testimony of Dr. Shah in ruling on

22  Defendants' motion for summary judgment.

23  **III.    Motion for Summary Judgment**

24      Defendants argue they are entitled to summary judgment on all of Plaintiff's

25  claims because Plaintiff provides no evidence that Officer Tomek used excessive force or

26  caused his back injury. (Doc. 37 at 1).

27      **A.    Summary Judgment Standard**

28      Summary judgment is appropriate when "the movant shows that there is no

genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "A party asserting that a fact cannot be or is genuinely disputed must support that assertion by . . . citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits, or declarations, stipulations . . . admissions, interrogatory answers, or other materials," or by "showing that materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." *Id.* 56(c)(1)(A), (B). Thus, summary judgment is mandated "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

Initially, the movant bears the burden of pointing out to the Court the basis for the motion and the elements of the causes of action upon which the non-movant will be unable to establish a genuine issue of material fact. *Id.* at 323. The burden then shifts to the non-movant to establish the existence of material fact. *Id.* The non-movant "must do more than simply show that there is some metaphysical doubt as to the material facts" by "com[ing] forward with 'specific facts showing that there is a *genuine* issue for trial.'" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986) (quoting Fed.R.Civ.P. 56(e) (1963) (amended 2010)). A dispute about a fact is "genuine" if the evidence is "such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The non-movant's bare assertions, standing alone, are insufficient to create a material issue of fact and defeat a motion for summary judgment. *Id.* at 247–48. In the summary judgment context, the Court construes all disputed facts in the light most favorable to the non-moving party, *Ellison v. Robertson*, 357 F.3d 1072, 1075 (9th Cir. 2004), but the Court of Appeals has "refused to find a 'genuine issue' [of material fact] where the only evidence presented is 'uncorroborated and self-serving' testimony," *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1061 (9th Cir. 2002) (quoting *Kennedy v. Applause, Inc.*, 90 F.3d 1477, 1481

1    (9th Cir. 1996)).

2    **B.**    **Excessive Force**

3    Plaintiff contends there is a genuine issue of material fact as to whether Officer

4 Tomek used excessive force in arresting him and therefore the Court should not grant

5 summary judgment on his section 1983 claim. (Doc. 44 at 8).

6    **1.**    **Legal Standard**

7    Section 1983 "is not itself a source of substantive rights, but merely provides a

8 method for vindicating federal rights elsewhere conferred." *Graham v. Connor*, 490 U.S.

9 386, 393-94 (1989) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)) (internal

10 quotation marks omitted). A claim for excessive force "in the context of an arrest" is

11 analyzed for a Fourth Amendment violation. *Id.* at 394. The inquiry is "whether the

12 officers' actions are 'objectively reasonable' in light of the facts and circumstances

13 confronting them, without regard to their underlying intent or motivation." *Id.* at 397.

14 This requires balancing "the extent of the intrusion on the individual's Fourth

15 Amendment rights against the government's interests." *Espinosa v. City & Cnty. of San*

16 *Francisco*, 598 F.3d 528, 537 (9th Cir. 2010).

17    The Court of Appeals engages in a three-step analysis to determine if a Fourth

18 Amendment violation has occurred. *See id.* "First, we must assess the severity of the

19 intrusion on the individual's Fourth Amendment rights by evaluating 'the type and

20 amount of force inflicted.'" *Id.* (quoting *Miller v. Clark Cnty.*, 340 F.3d 959, 964 (9th

21 Cir. 2003)). "Next, we must evaluate the government's interests by assessing (1) the

22 severity of the crime; (2) whether the suspect posed an immediate threat to the officers'

23 or public's safety; and (3) whether the suspect was resisting arrest or attempting to

24 escape." *Id.* (citing *Graham*, 490 U.S. at 396). "Third, 'we balance the gravity of the

25 intrusion on the individual against the government's need for that intrusion.'" *Id.* (quoting

26 *Miller*, 340 F.3d at 964).

27    Because balancing the officers' intrusion on an individual's Fourth Amendment

28 rights against the government's interests "nearly always requires a jury to sift through

1   disputed factual contentions, and to draw inferences therefrom," the Court of Appeals has
2   "held on many occasions that summary judgment or judgment as a matter of law in
3   excessive force cases should be granted sparingly." *Santos v. Gates*, 287 F.3d 846, 853
4   (9th Cir. 2002). But "defendants can still win on summary judgment if the district court
5   concludes, after resolving all factual disputes in favor of the plaintiff, that the officer's
6   use of force was objectively reasonable under the circumstances." *Scott v. Henrich*, 39
7   F.3d 912, 915 (9th Cir. 1994).

8                    **2.     Analysis**

9        The parties disagree as to whether excessive force was used, but their opposing
10  conclusions stem solely from the differences in their versions of Officer Tomek's
11  conduct. *See* (Doc. 37 at 11); (Doc. 44 at 7). For example, Defendants do not contend
12  Officer Tomek's actions were objectively reasonable if he had jumped onto Plaintiff's
13  back with both knees and caused injury. Accordingly, the first step in the analysis, in
14  which the Court must evaluate "the type and amount of force inflicted," *Miller*, 340 F.3d
15  at 964, is dispositive of whether Officer Tomek used excessive force.

16       Plaintiff contends that whether Officer Tomek jumped onto Plaintiff's back[7] is a
17  disputed issue of fact because the parties present controverting testimony and the Court
18  may not weigh the credibility of witnesses as a matter of law. (Doc. 44 at 1, 8). In
19  *LaLonde v. County of Riverside*, 204 F.3d 947 (9th Cir. 2000), the Court of Appeals
20  addressed this argument on similar, although distinguishable, facts.

21       In *LaLonde*, the plaintiff had no back pain prior to his arrest but alleged severe
22  back pain after he was arrested. 204 F.3d at 953, 959. The arresting officer had forcefully
23  placed his knee into the plaintiff's back while handcuffing him. *Id.* at 952. The Court of
24  Appeals reversed the district court's grant of summary judgment, concluding that a
25  disputed issue of fact existed as to whether the "officer had placed his knee in [the
26  plaintiff's] back or near his shoulder blade." *Id.* at 959. But in *LaLonde*, the disputed

27  _____

28       [7] Plaintiff does not seek any damages for his alleged injuries to his mouth. *See*
     (Doc. 38 at 4); (Doc. 45 at 3).

issue was whether the force, which ultimately injured the plaintiff's back, was excessive. *See id.* ("However, *if the extent of the injury to LaLonde's back is serious enough*, a jury could conclude that [the officer] used force in excess of what was reasonable. . . ." (emphasis added)). *LaLonde* is merely consistent with the principle that officer-inflicted force is not excessive simply because the force caused injury to the suspect. *See Forrester v. City of San Diego*, 25 F.3d 804, 807-08 (9th Cir. 1994) ("[T]he inquiry is whether the force that was used to effect a particular seizure was reasonable."). Because it was clear in *LaLonde* that the officer's force had injured the plaintiff, the question of whether that level of force was objectively reasonable was a disputed issue of fact for the jury.

*LaLonde* addressed the necessity of officer-inflicted force when that force results in injury. *See Espinosa*, 598 F.3d at 537. Here, the dispute arises earlier in the analysis: the nature of the force inflicted upon Plaintiff. The precise issue is narrower still: whether Officer Tomek *caused* injury to Plaintiff's back. Claims of injury stemming from excessive force require supporting medical records. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 922 (9th Cir. 2001); *accord Rodriguez v. City of New York*, 802 F. Supp. 2d 477, 481 (S.D.N.Y. 2011) (finding no rational jury could return a verdict for the plaintiff who alleged being choked and punched but offered no corroborating medical records). Plaintiff is incorrect that he "is not required to demonstrate a resultant physical injury to establish excessive force." (Doc. 44 at 5). Plaintiff must show Officer Tomek caused injury to his back.[8]

Plaintiff rests his argument vis-à-vis causation upon three premises: (1) because Plaintiff complained of back pain following his arrest, he must have suffered injury during the arrest; (2) Plaintiff testified at his deposition that Officer Tomek jumped on his

---

[8] Plaintiff's citation to *Robinson v. Solano County*, 278 F.3d 1007 (9th Cir. 2002), (Doc. 44 at 5), for the proposition that injury is not required is unavailing because that case so held only in the context of an "officer who terrorizes a civilian by brandishing a cocked gun in front of that civilian's face." 278 F.3d at 1015 (citation omitted). Additionally, Plaintiff has inextricably tied his claim to proof of causation: Plaintiff does not argue that Officer Tomek used excessive force but did *not* injure Plaintiff's back.

back causing injury; and (3) Dr. Shah's affidavit.[9] (Doc. 44 at 5 & n.2).

The Court concludes that Plaintiff fails as a matter of law to prove that Officer Tomek caused him to suffer a back injury[10] because he offers no expert opinion, and therefore no competent evidence, tending to show Officer Tomek's conduct caused him to either suffer a new back injury or aggravated a preexisting back injury.[11] On this point, the facts are similar to those in *Bishop v. San Quentin State Prison Work Place*, 2002 WL 1767416 (N.D. Cal. July 29, 2002), which also involved a section 1983 claim for violation of the plaintiff's Fourth Amendment rights.

In that case, Bishop was arrested on a parole violation and alleged that during the arrest, he offered no resistance yet the officer "cranked" his wrist back and also his index finger so far that his finger was fractured. 2002 WL 1767416, at *1. The arresting officer testified that he "handcuffed Mr. Bishop without incident" but while preparing paperwork after the arrest Bishop complained that his "shoulders were bothering him" and that Bishop "had a bad shoulder and bad knee from a previous fall in the bathtub." The officer did not recall Bishop mentioning his finger. *Id.*

Bishop's medical intake questionnaire at the jail "reported that Bishop did not have any visible signs of trauma or wounds and did not indicate that Bishop mentioned any problem with his finger having been hurt, although Bishop complained about several

---

[9] The Court will not consider Dr. Shah's affidavit for the reasons stated earlier.

[10] In reaching this conclusion, the Court assumes a juror would believe Plaintiff's testimony that Officer Tomek jumped on Plaintiff's back, because the Court may not weigh the disputed testimony of Plaintiff and the officers.

[11] At one point, Plaintiff told his treating practitioners that Officer Tomek's conduct aggravated a preexisting back injury. *See, e.g.*, (Doc. 38-1 at 53). Plaintiff later reverted to his claim that Officer Tomek caused the entire injury, (Doc. 38-1 at 57); (Doc. 45 at 3). But Plaintiff's response appears to seize upon the possibility of aggravation, arguing that the eggshell skull doctrine applies. (Doc. 44 at 5). This doctrine renders a tortfeasor liable for unforeseeable injuries "*once they inflict harm on a plaintiff's body*." *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1192 (9th Cir. 2002) (emphasis added). The doctrine does not relieve the plaintiff from proving that the tortfeasor caused harm. *See id.* ("The defendant of course is liable only for the extent to which the defendant's conduct has resulted in an aggravation of the pre-existing condition, and not for the condition as it was; but as to the aggravation, foreseeability is not a factor." (citation omitted)).

1   other preexisting health problems." *Id.* An expert witness examined an x-ray taken three

2   months after Bishop's arrest and concluded that the x-ray was not consistent with a prior

3   facture of the finger. *Id.* at *1-2.

4        The defendant moved for summary judgment, arguing there was no genuine issue

5   of material fact. *Id.* at *1. Because Bishop failed to present any medical records and no

6   evidence supporting his claim other than his own statements, the court concluded Bishop

7   could not show more than a *de minimis* injury and thus could not establish excessive

8   force as a matter of law. *Id.* at *4. Significantly, the court concluded that "Bishop

9   apparently believes that his finger was broken during the arrest, but he has not shown he

10  has any medical training or expertise upon which to base a claim. Thus, taken in the light

11  most favorable to Bishop, the undisputed evidence shows that his finger was not broken."

12  *Id.*

13       As in *Bishop*, Plaintiff has not shown that he has any medical training or expertise

14  upon which he can base claims relating to the medical particulars of an injury. Of course,

15  Plaintiff is competent to testify that Officer Tomek's conduct caused *pain*, because a

16  plaintiff does not need particular medical expertise to testify that he felt pain at a

17  particular time. But causation cannot be left "to the jury's speculation," *Salica v. Tucson*

18  *Heart Hosp.-Carondelet, L.L.C.*, 231 P.3d 946, 951 ¶ 16 (Ariz. Ct. App. 2010), and

19  "must be proven within a reasonable medical probability based upon competent expert

20  testimony." *See Kennedy v. S. Cal. Edison Co.*, 268 F.3d 763, 768 (9th Cir. 2001)

21  (applying California law and quoting *Jones v. Ortho Pharm. Corp.*, 209 Cal. Rptr. 456,

22  460 (Ct. App. 1985)). Given the complexity of Plaintiff's back conditions and the

23  medical expertise required to understand the mechanisms of injury and distinguish

24  between acute and chronic conditions, Plaintiff's mere allegations are insufficient to

25  establish causation of injury to Plaintiff's back.[12] *See Bishop*, 2002 WL 1767416, at *4.

26

27  [12] To the contrary, the expert testimony shows that Plaintiff's injury is chronic.
    Defendants' expert witness, Dr. Stevens, an orthopedic surgeon, opined that Plaintiff's
28  medical records and imaging studies showed no signs of acute injury but only "chronic
    and longstanding" injuries. (Doc. 38-1 at 68). He opined that the mechanism of injury
    necessary to cause Plaintiff's injuries could not have occurred from a person jumping on

1    Plaintiff also alleges, however, that injuries to his teeth and wrists are proof of

2    excessive force. (Doc. 44 at 7-8). But Plaintiff has not established the existence of any

3    injury to his teeth because he offers no supporting medical records and is not seeking

4    damages for such injury. *See* (Doc. 38 at 4); (Doc. 45 at 3); *Arpin*, 261 F.3d at 922. On

5    the contrary, the evidence contradicts his claim.[13] *See* (Doc. 38-1 at 47). Moreover, even

---

Plaintiff's back. (*Id.* at 68). Similarly, Dr. Emerson also testified that Plaintiff's injury could not have been caused by someone jumping on Plaintiff's back. (*Id.* at 73-76).

The Court notes that Dr. Emerson preliminarily diagnosed "possible acute on chronic pars fractures." (*Id.* at 51). However, Dr. Emerson based that diagnosis on Plaintiff's self-reported testimony, (*id.*), and his final opinion once he had reviewed the objective diagnostic images was strictly chronic. (*Id.* at 53).

[13] Even if Plaintiff were claiming for damages to his teeth, Plaintiff's excessive force claim still fails as a matter of law. A dispute about a material fact is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. This standard mirrors that of a directed verdict, and "necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* at 251-52. "The judge's inquiry, therefore, unavoidably asks whether reasonable jurors could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. . . ." *Id.* at 252.

No reasonable juror could find by a preponderance of the evidence that Officer Tomek caused injury to Plaintiff's back. Plaintiff's sole evidence in support of his claim is his own deposition testimony, belied by his own contemporaneous statements. *Cf. Kennedy v. Allied Mut. Ins. Co.*, 952 F.2d 262, 266 (9th Cir. 1991) ("The general rule in the Ninth Circuit is that a party cannot create an issue of fact by an affidavit contradicting his prior deposition testimony."). The fire department's examination of Plaintiff, made at his own request after he complained of back pain, noted that Plaintiff reported aggravating an existing back problem. (Doc. 38-1 at 35). The medical screening records for Plaintiff's booking show Plaintiff reported a history of chronic back pain and denied any other medical issues. (*Id.* at 47). Later health records show Plaintiff reporting he had been seen before for back pain prior to his arrest. (*Id.* at 49). Dr. Emerson's notes show Plaintiff on two occasions reported a lifetime history of back pain. (*Id.* at 51, 53).

Plaintiff disputes these records with his deposition testimony in which he flatly asserts that he neither had nor mentioned a previous back injury. He does not explain why his testimony contradicts the records of so many disinterested third parties. No reasonable juror could believe that the authors of these records conspired to inaccurately record Plaintiff's contemporaneous statements. To the extent the records appear to support Plaintiff's deposition testimony, it is only because they contain Plaintiff's self-reported, non-contemporaneous statements that Officer Tomek caused him injury. *See, e.g.*, (*id.* at 49).

To return a verdict in Plaintiff's favor, a juror would have to disregard as untrue all of Plaintiff's contemporaneous statements concerning his history of back pain, yet accept as true Plaintiff's uncorroborated deposition testimony despite Plaintiff offering no evidence of medical causation to support his claims. A juror would also have to disregard the medical findings of Plaintiff's treating providers as well as Defendants' uncontroverted expert witnesses who testify the injury was strictly chronic in nature. In

accepting as true Plaintiff's testimony that he was slammed against the police car, the handcuffs were excessively tight, and that he was not intentionally sitting on his handcuffs, he can at best establish the presence of a "skin tear" on one wrist that necessitated antibiotic ointment and a bandage. (*Id.*). This *de minimis* injury to Plaintiff is a minor intrusion upon his Fourth Amendment interests.

On the other hand, the three *Graham* factors weigh heavily in favor of the government. First, the crime was severe. The officers suspected Plaintiff of committing felony flight from a police officer as well as possible aggravated assault for throwing the firecrackers.[14] (Doc. 38-1 at 22). The government has a strong interest in apprehending felony suspects, *Miller*, 340 F.3d at 964, and so this factor weighs in favor of the government. Second, Plaintiff posed an immediate threat to the officers' safety. There is a strong government interest in ensuring police safety, which is particularly threatened during vehicle stops. *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1327 (9th Cir. 1995). Plaintiff argues he posed no threat because he was unarmed and compliant, (Doc. 44 at 6), but the reasonableness of force "must be judged from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396. Officer Smith testified that he and Officer Tomek could not see into the vehicle and were unsure whether there were other occupants. (Doc. 38-1 at 20-21). The officers reasonably believed that their safety was threatened, and this factor also weighs in favor of the government. The third factor, whether the suspect was attempting to escape, weighs slightly in Plaintiff's favor because it is undisputed that Plaintiff fully complied with the officers' commands and did not resist arrest after his original flight ended.

---

weighing the evidence in this manner, a juror would also have to find Plaintiff retained general credibility despite his alleged mouth injury being contradicted by a mountain of objective evidence. *See, e.g.*, (Doc. 38-1 at 47). Such a juror would not be reasonable, and therefore Plaintiff's claim would fail as a matter of law.

[14] Plaintiff argues he committed no crimes because the officers did not witness Plaintiff throwing the firecrackers. (Doc. 44 at 7). Plaintiff ignores the felony of fleeing from the officers. *See* A.R.S. § 28-622.01.

Balancing the minimal intrusion upon Plaintiff's Fourth Amendment rights against the substantial government interest in intruding upon those rights, the Court concludes Officer Tomek's force was objectively reasonable even if that force caused Plaintiff to suffer a skin tear on one wrist. *See Walker v. Benter*, 41 F. Supp. 2d 1067, 1074-75 (C.D. Cal. 1999) (frisking, handcuffing, and detaining a suspect in a police car was not excessive force). Consequently, as a matter of law Plaintiff has not established a Fourth Amendment claim for excessive force.[15]

### C.    State Law Claims

Plaintiff also brings claims against Defendants for assault and battery, negligence and gross negligence, and intentional infliction of emotional distress. (Doc. 1-1 at 5-6). These claims fail as a matter of law.

### 1.    Assault & Battery

Because Arizona law provides that a person cannot be civilly liable for justified conduct, A.R.S. § 13-413, Defendants are not liable for assault or battery if Officer Tomek was justified in using force to effect Plaintiff's arrest. A person is justified in using physical force to make an arrest if: (1) a reasonable person would believe "such force is immediately necessary to effect the arrest;" (2) "[s]uch person makes known the purpose of the arrest . . . or believes that it is otherwise known or cannot reasonably be made known to the person to be arrested or detailed;" and (3) "[a] reasonable person would believe the arrest or detention to be lawful." A.R.S. § 13-409. Plaintiff does not and cannot dispute that the latter two elements are satisfied.

As the Court concluded in its excessive force analysis, Officer Tomek's use of force was objectively reasonable. The justification statute requires that a "reasonable person would believe" the force was necessary. A.R.S. § 13-409. Therefore, Officer Tomek was justified under Arizona law in that use of force. *Cf. Miller*, 340 F.3d at 968 n.14 (concluding the plaintiff's "assault and battery claim . . . falls along with [his]

---

[15] Because Plaintiff has not shown a constitutional violation, Defendants correctly contend Officer Tomek is entitled to qualified immunity. (Doc. 37 at 11 n.7). *See Gerhart v. Lake Cnty., Mont.*, 637 F.3d 1013, 1024 (9th Cir. 2011).

rejected federal Fourth Amendment claim.") (applying similar Washington law).

### 2.     Negligence & Gross Negligence

Defendants argue that police officers are immune from liability for "mere negligence" in police work. (Doc. 37 at 13). Although they cite *Landeros v. City of Tucson*, 831 P.2d 850 (Ariz. Ct. App. 1992) and *Clouse ex. rel Clouse v. State*, 16 P.3d 757 (Ariz. 2001) for this proposition, these cases hold only that simple negligence *in the investigation of a crime* is not a tort. *Landeros*, 831 P.2d at 851; *Clouse*, 16 P.3d at 764 ¶ 26. Nevertheless, Officer Tomek was not negligent in using force to effect Plaintiff's arrest. An action for negligence requires breach of the duty "to conform to the legal standard of reasonable conduct in light of the apparent risk." *Stanley v. McCarver*, 92 P.3d 849, 854 ¶ 16 (Ariz. 2004) (citation omitted). Because Officer Tomek's use of force was objectively reasonable, he did not act negligently toward Plaintiff.

Similarly, Officer Tomek did not act with gross negligence. *See Walls v. Ariz. Dep't of Pub. Safety*, 826 P.2d 1217, 1221 (Ariz. Ct. App. 1991) (defining gross negligence as, in part, when a party "acts . . . when he knows or has reason to know facts which would lead a *reasonable* person to realize that his conduct . . ." (emphasis added)). Although Plaintiff contends there is a jury issue as to whether Officer Tomek was grossly negligent, (Doc. 44 at 9), Officer Tomek's objectively reasonable use of force precludes a reasonable juror from finding gross negligence. *See id.* ("In order to present [gross negligence] to the jury, . . . the evidence on the issue must be more than slight and may not border on conjecture.").

### 3.     Intentional Infliction of Emotional Distress

Plaintiff acknowledges his claim for intentional infliction of emotional distress (IIED) is contingent upon his version of Officer Tomek's conduct. (Doc. 44 at 10). To prove a claim for IIED, a plaintiff must show (1) the defendant's conduct was "extreme" and "outrageous," (2) "the defendant must either intend to cause emotional distress or recklessly disregard the near certainty that such distress will result from his conduct, and (3) "severe emotional distress must indeed occur as a result of defendant's conduct."

*Ford v. Revlon, Inc.*, 734 P.2d 580, 585 (Ariz. 1987). Plaintiff, in his controverting statement of facts, does not dispute that he has not suffered severe emotional distress. (Doc. 38 at 4); (Doc. 45 at 3). There is no evidence that Officer Tomek's conduct was extreme and outrageous. Plaintiff has not established this claim.

### 4.      Respondeat Superior

Plaintiff dismissed his section 1983 claim against the City and relies upon a theory of respondeat superior on his remaining claims. *See supra* note 4. The City cannot be liable under section 1983 on a respondeat superior theory, and therefore Plaintiff's claim against the City for excessive force fails. *See Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658, 691 (1978). Moreover, because Plaintiff has not established any state-law claims against Officer Tomek, Plaintiff's state-law claims against the City also fail. *See Warner v. Sw. Desert Images, LLC*, 180 P.3d 986, 994 ¶ 17 (Ariz. Ct. App. 2008).

### IV.      Rule 37(c)(1) Finding for Dismissal

Because under the foregoing analysis, the Rule 37(c)(1) sanction excluding Dr. Shah's opinion testimony is a basis for the Court's dismissal of Plaintiff's claims, the Court is required to consider "whether the claimed noncompliance involved willfulness, fault, or bad faith." *R & R Sails, Inc. v. Ins. Co. of Penn.*, 673 F.3d 1240, 1247 & n.1 (9th Cir. 2012). As previously explained, the Court finds Plaintiff's refusal to produce Dr. Shah's expert report to be willful.

### V.      Request for Attorneys' Fees

Defendants request leave to move for an award of attorneys' fees against Plaintiff's attorney pursuant to 42 U.S.C. § 1988 and Rule 11. (Doc. 37 at 14). A prevailing defendant in a section 1988 claim for attorneys' fees may recover fees only in "exceptional circumstances" when the plaintiff's claims are "frivolous, unreasonable, or groundless." *Braunstein v. Ariz. Dep't of Transp.*, 683 F.3d 1177, 1187 (9th Cir. 2012). Plaintiff's claims, although ultimately unsuccessful, do not meet this standard. The Court denies Defendants' request.

## VI.     Conclusion

For the foregoing reasons,

**IT IS ORDERED** granting Defendants' Motion to Strike Plaintiff's Disclosure of Expert Witnesses (Doc. 39).

**IT IS FURTHER ORDERED** granting Defendants' Motion for Summary Judgment (Doc. 37).

**IT IS FURTHER ORDERED** denying Defendants' request for leave to move for attorneys' fees.

**IT IS FURTHER ORDERED** that the Clerk of the Court enter judgment in favor of Defendants and against Plaintiff.

Dated this 13th day of December, 2013.

_____
James A. Teilborg
Senior United States District Judge